UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROGER CORTEZ, | 1:14-cv-00061-LJO-GSA |
| Plaintiff, | **ORDER ON MOTION TO DISMISS** (Doc. 4) |
| v. | |
| CITY OF PORTERVILLE, | |
| Defendant. | |

**I. PRELIMINARY STATEMENT TO PARTIES AND COUNSEL**

Judges in the Eastern District of California carry the heaviest caseloads in the nation, and this Court is unable to devote inordinate time and resources to individual cases and matters. Given the shortage of district judges and staff, this Court addresses only the arguments, evidence, and matters necessary to reach the decision in this order. The parties and counsel are encouraged to contact the offices of United States Senators Diane Feinstein and Barbara Boxer to address this Court's inability to accommodate the parties and this action. The parties are required to reconsider consent to conduct all further proceedings before a Magistrate Judge, whose schedules are far more realistic and accommodating to parties than that of U.S. District Judge Lawrence J. O'Neill, who must prioritize criminal and older civil cases.

Civil trials set before Judge O'Neill trail until he becomes available and are subject to suspension mid-trial to accommodate criminal matters. Civil trials are no longer reset to a later date if Judge O'Neill is unavailable on the original date set for trial. Moreover, this Court's Fresno Division randomly and without advance notice reassigns civil actions to U.S. District Judges throughout the

1

nation to serve as visiting judges.  In the absence of Magistrate Judge consent, this action is subject to reassignment to a U.S. District Judge from outside the Eastern District of California.

## II. INTRODUCTION

Plaintiff Roger Cortez ("Mr. Cortez") brings this suit against the City of Porterville ("City"). He alleges disability related claims arising out of his inability to access portions of the Porterville Sports Complex ("Sports Complex") with his granddaughter who uses a wheelchair for mobility. Pending before the Court is the City's motion to dismiss for failure to state a claim.  For the reasons discussed below, this Court DENIES the City's motion.

## III. BACKGROUND

**A. Facts**[1]

Mr. Cortez's granddaughter suffers from significant disabilities; including, a chromosomal disorder, lack of motor skills, visual and hearing impairments, and epilepsy.  She uses a wheelchair for mobility.  On September 7, 2013, Mr. Cortez and his granddaughter visited the Sports Complex to watch his grandson play football.  The duo experienced difficulty reaching the playing field because the only way to get from the parking facility to the playing field was by traversing over grass.  The grass was too high for Mr. Cortez to push his granddaughter in her wheelchair safely so Mr. Cortez carried his granddaughter across the grassy area while his wife pushed her empty wheelchair.  Mr. Cortez carried his granddaughter from the parking facility to the football field and to the playground which caused him physical difficulty and frustration.

**B. Procedural Background**

On January 16, 2014, Mr. Cortez initiated the instant lawsuit against the City.  He alleges that he was "denied full and equal access to the programs, services and activities offered by Defendants to the general public at the Complex because of the known disability of his granddaughter." (Doc. 1 ¶ 20).  He alleges violations of Title II of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12131, et seq.; the Rehabilitation Act ("RA"), 29 U.S.C. § 794; and California's Disabled Persons Act ("DPA"), Cal. Civ. Code §§ 54, et seq.  Pending before the Court is the City's motion to

---

[1] The background facts are derived from the complaint.  The Court accepts the factual allegations in the complaint as true for purposes of this motion.  *See Lazy Y Ranch LTD. v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008).

dismiss for failure to state a claim. On March 18, 2014, this Court found the motion suitable for a decision without oral argument, pursuant to Local Rule 230(g), and vacated the March 24, 2014, hearing date.

### IV. LEGAL STANDARD

A motion to dismiss pursuant to FED. R. CIV. P. 12(b)(6) is a challenge to the sufficiency of the allegations set forth in the complaint. A FED. R. CIV. P. 12(b)(6) dismissal is proper where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balisteri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990). In considering a motion to dismiss for failure to state a claim, the court generally accepts as true the allegations in the complaint, construes the pleading in the light most favorable to the party opposing the motion, and resolves all doubts in the pleader's favor. *Lazy Y. Ranch LTD v. Behrens,* 546 F.3d 580, 588 (9th Cir. 2008).

To survive a FED. R. CIV. P. 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility for entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a relator's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. 544, 555 (2007) (internal citations omitted). Thus, "bare assertions . . . amount[ing] to nothing more than a 'formulaic recitation of the elements' . . . are not entitled to be assumed true." *Iqbal,* 129 S. Ct. at 1951. A court is "free to ignore legal conclusions, unsupported conclusions, unwarranted inferences and sweeping legal conclusions cast in the form of factual

allegations." *Farm Credit Serv. v. Am. State Bank*, 339 F.3d 764, 767 (8th Cir. 2003) (citation omitted).  Moreover, a court "will dismiss any claim that, even when construed in the light most favorable to plaintiff, fails to plead sufficiently all required elements of a cause of action." *Student Loan Mktg. Ass'n v. Hanes*, 181 F.R.D. 629, 634 (S.D. Cal. 1998).  In practice, "a complaint . . . must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Twombly*, 550 U.S. at 562 (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)).  To the extent that the pleadings can be cured by the allegation of additional facts, the plaintiff should be afforded leave to amend. *Cook, Perkiss and Liehe, Inc. v. N. California Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990) (citations omitted).

## V. DISCUSSION

### A. First Cause of Action: ADA Claim

The City contends that Mr. Cortez's ADA claim is factually insufficient because he fails to allege that he is a "qualified individual with a disability" and that he was excluded from or denied the benefits of the Sports Complex.  The City further argues that to the extent Mr. Cortez is acting on behalf of his granddaughter, there is no Ninth Circuit authority to support an associational claim under Title II of the ADA.[2]  Mr. Cortez does not dispute that he is acting on behalf of his granddaughter. Thus, the issue before the Court is whether an individual that is not disabled may assert an associational claim under Title II of the ADA and if so, whether Mr. Cortez has standing based on the facts alleged in his complaint.

### 1. Associational Standing Generally

The Court determines that an individual can assert an associational claim under Title II of the ADA in light of the broad language of Title II's enforcement provision and the statute's implementing regulations.  Title II of the ADA provides:

> Subject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from the participation in or be denied the benefits of the services, programs, or activities of a public

---

[2] An "associational" discrimination claim under the ADA is one in which the plaintiff derives his individual right to sue through his association with an individual that is disabled. *Glass v. Hillsboro School Dist. 1J*, 142 F. Supp. 2d 1286, 1287-88 (D. Or. 2001).

4

entity, or be subjected to discrimination by any such entity.

42 U.S.C. § 12132.  Title II provides a remedy to "*any person* alleging discrimination on the basis of disability in violation of section 12132."  42 U.S.C. § 12133 (emphasis added).  The language employed in the enforcement provision "does not evince a congressional intent to limit standing to individuals with disabilities.  Instead, the use of the phrase ['any person'] and the absence of any language limiting standing to those with disabilities indicates Congress's intent to grant standing under Title II as broadly as is permitted by Article III of the Constitution."  *Barker v. Riverside County Office of Educ.*, 584 F.3d 821, 827 (9th Cir. 2009) (discussing standing as it relates to a retaliation claim under Title II of the ADA brought by an individual that did not have a disability) (internal quotation marks omitted).

The implementing regulations provide further support for the ability to assert an associational claim under Title II of the ADA.  The regulations provide that "[a] public entity shall not exclude or otherwise deny equal services, programs, or activities to an individual or entity because of the known disability of an individual with whom the individual or entity is known to have a relationship or association."  28 C.F.R. § 35.130(g).  Accordingly, the "regulations explicitly prohibit local governments from discriminating against [an individual] because of the disability of [an individual] with whom the [person] associates."  *A Helping Hand, LLC v. Baltimore County, MD*, 515 F.3d 356, 364 (4th Cir. 2008).  Therefore, this Court holds that an individual without a disability can assert an associational claim under Title II of the ADA.

**2. Mr. Cortez's Standing**

Having determined that Mr. Cortez can bring an associational claim under Title II of the ADA, it must be determined whether Mr. Cortez has standing based on the facts of this case.  Article III standing requires a showing that (1) plaintiff suffered an injury in fact; (2) the injury is fairly traceable to defendant's actions; and (3) it is likely that plaintiff's injury will be redressed by a favorable court ruling.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).  A plaintiff must demonstrate that he himself was harmed; that is, that he suffered a specific, separate, and direct injury to himself caused by defendant's actions.  *Glass v. Hillsboro School Dist. 1J*, 142 F. Supp. 2d 1286, 1287-88 (D. Or. 2001).

Mr. Cortez alleges that on September 7, 2013, he "encountered accessibility barriers that denied him full and equal access to the services, programs and activities offered by Defendants to members of the public at the Complex." (Doc. 1 ¶ 16). Specifically, Mr. Cortez alleges that there are no accessible pedestrian pathways from the parking facilities to the playing fields and playground. (Doc. 1 ¶ 17). Thus, he was forced to carry his wheelchair bound granddaughter across a grassy area in order to access the playing fields and playground. (*Id.*). Mr. Cortez further alleges that he would like to continue to visit the Sports Complex with his granddaughter but the City's failure to ensure the accessibility of the facility has caused him "to experience difficulty and feel anxious, frustrated and conspicuous." (Doc. 1 ¶ 19). Because Mr. Cortez wishes to access and enjoy the Sports Complex with his disabled granddaughter but is deterred from doing so due to accessibility issues, he has alleged an injury separate and distinct from that of his granddaughter. *See Glass*, 142 F. Supp. 2d at 1291-92 ("[i]f a non-disabled companion is excluded from the theater because of his or her association with a disabled individual (for example, no room in the theater for wheelchairs), then the non-disabled companion suffers direct harm to his or her own independent right to be in the theater because of the association with a disabled person").

In addition, Mr. Cortez's injury is traceable to defendant's actions. *Lujan*, 504 U.S. at 560. Mr. Cortez's inability to fully and equally access the Sports Complex's playing fields and playground with his granddaughter is traceable to the City's alleged failure to provide "accessible pedestrian pathways from the parking facilities to the playing fields and playgrounds." (Doc. 1 ¶ 17). Finally, Mr. Cortez's inability to fully and equally access the Sports Complex can be redressed by this Court. *Lujan*, 504 U.S. at 561. Thus, Mr. Cortez has satisfied all three standing requirements set forth in *Lujan*. *Id*. at 560-61. Mr. Cortez has standing to assert his associational discrimination claim under Title II of the ADA. Thus, the City's motion to dismiss Mr. Cortez's first cause of action is DENIED.

**B. Second Cause of Action: RA Claim**

The City challenges Mr. Cortez's RA claim with the same arguments it uses to challenge Mr. Cortez's ADA claim. It contends that Mr. Cortez's RA claim is factually insufficient because he fails to allege that he is an individual with a disability and that he was subjected to discrimination because of his disability. The City further argues that to the extent Mr. Cortez is acting on behalf of his

granddaughter, there is no Ninth Circuit authority to support an associational claim under the RA. Again, Mr. Cortez does not dispute that he is acting on behalf of his granddaughter. Thus, the issue before the Court is whether Mr. Cortez may assert an associational claim under the RA.

The Court determines that an individual can assert an associational claim under the RA. Section 504 of the RA provides that "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . ." 29 U.S.C. § 794(a). The RA provides a remedy to "*any person aggrieved by any act or failure to act*" by a recipient of Federal financial assistance. 29 U.S.C. § 794a(a)(2) (emphasis added). The broad "any person" language in the enforcement provision indicates Congress' intent to grant standing as broadly as is permitted under Article III. In addition, Congress has instructed that the ADA and RA should be interpreted consistently. *See Bay Area Addiction Research and Treatment, Inc. v. City of Antioch*, 179 F.3d 725, 731 (9th Cir. 1999) (noting that Congress has instructed that both acts are to be interpreted consistently). Thus, this Court concludes that associational discrimination claims are viable under the RA, just as they are under the ADA.

Mr. Cortez has standing to assert his associational discrimination claim under the RA for the same reasons that he has standing to assert his associational discrimination claim under the ADA. *See* Section IV.A.2., *supra*. Accordingly, the City's motion to dismiss Mr. Cortez's second cause of action is DENIED.

**C. Third Cause of Action: DPA Claim**

Like the City's challenges to Mr. Cortez's ADA and RA claims, the City contends that Mr. Cortez's DPA claim should be dismissed because Mr. Cortez fails to allege that he is disabled and that he was denied equal access to the Sports Complex. In response, Mr. Cortez asserts that he can pursue an associational claim under the DPA.

The Court determines that, like the ADA, an individual can allege an associational claim under the DPA. The DPA provides that "[i]ndividuals with disabilities . . . have the same right as the general public to the full and free use of . . . public buildings . . . public facilities, and other public places." Cal. Civ. Code § 54(a). The DPA further provides that "[a] violation of the right of an individual

7

under the Americans with Disabilities Act of 1990 . . . also constitutes a violation of this section." Cal. Civ. Code § 54(c); *see also Jankey v. Song Koo Lee*, 55 Cal. 4th 1038, 1045 (2012) (recognizing that the Legislature amended the DPA to incorporate ADA violations and make them a basis for relief under the act). Because the DPA explicitly incorporates ADA violations as a basis for relief coupled with the fact that this Court previously determined, *see* Section IV.A.1., *supra*, that an individual may allege an associational discrimination claim under Title II of the ADA, leads this Court to conclude that associational discrimination claims are available under the DPA.

Mr. Cortez has standing to assert his associational discrimination claim under the DPA for the same reasons that he has standing to assert his associational discrimination claim under Title II of the ADA. *See* Section IV.A.2., *supra*. The City's motion to dismiss Mr. Cortez's third cause of action is DENIED.

## VI. CONCLUSION AND ORDER

For the reasons discussed above, this Court DENIES the City's motion to dismiss.

IT IS SO ORDERED.

Dated:   **March 20, 2014**                    **/s/ Lawrence J. O'Neill**
                                               UNITED STATES DISTRICT JUDGE